# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 124
White Plains, NY 10601
Tel: (914) 428-7124 Fax: (914) 948-5109

---

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

January 2, 2026

**VIA EMAIL & ECF**
The Honorable Nelson S. Román
United States District Judge
Southern District of New York
Charles L. Brieant, Jr. Federal Building
and United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:   *United States v. Robert Smith*,
      **25 Cr. 410 (NSR)**

Dear Honorable Judge Román,



Robert, his former partner Wanelia, his daughter and step-children

### Introduction

  Robert Smith was destined to become the man of the house, as only a boy, since before his birth. His father was killed in a trucking accident while his mother was pregnant with him. His older brother was often out of the house and his mother lived with chronic illness and physical disability. Robert had to grow up faster, and more alone, than most.

  While Robert has four drug convictions, three are low-level offenses from when he was 18 and 20 years old. The time period of his life that followed, his adult years from age 20 til 33 reflect a time when he cared for his mother and became a father, to his daughter who is now 14, as well as a father to his former partner's children and sustained no arrests or convictions.

1



When his mother's passing in 2023 brought on feelings of guilt, self-condemnation and intensified responsibility, he diverted away from the legitimate job history he had been building. When presented with the choice to make more money faster, he regretfully relented to a familiar world with his actions in this case. But, this time is different for Robert, now 41. He is extremely remorseful, and disappointed in himself for causing his absence from his 14-year-old daughter's and stepchildren's lives a second time.

Robert has been using his time incarcerated as wisely as he can: he has earned SafeServ and Aramark certificates, has been working in the kitchen at Westchester County Jail for the last two months, been a trustee for almost a year, and started mental health treatment and medication for the first time in his adult life. (PSR ¶ 64). He is eager for change and to be there for his children as they grow up. Robert is mature enough now to confront his past and his grief, and to never return to "living on the edge." Letter by Robert Smith – Exhibit B.

> *My babygirl [is] 14 yr[s]. [old] and she need her father[.] I should be taking her to the prom this year and starting to look for college but instead I'm here in Valhalla facing federal time. But at the end of the day it's no one fault but mine and as a man I take full respoibility [sic] for all my action[.] I have hurt all my loved ones. Time wait[s] for no man and I'm mak[ing] the best of it and [trying to] better myself for my children.*

Id.

For these reasons, we ask Your Honor to vary a great deal downwards from his Guidelines and impose the statutory mandatory minimum sentence, 60 months' imprisonment. While this is less than Probation's recommended 96-month sentence, five years would not be just a slap on the wrist for Robert Smith who is 41-years-old and has a 14-year-old daughter. Probation's reasons supporting a variance remain:

> . . .the defendant has made some positive strides over the years that give us hope, such as earning a GED, reported intermittent periods of employment, engagement in drug treatment, and obtaining SafeServ certification and serving as a trustee while detained in this case. These

positive developments are indicative of someone who is amenable to rehabilitation, and therefore we believe his recidivism risk may be lower than the guidelines suggest and a sentence below the range would be sufficient.

PSR ¶ 20.

1. **The Nature and Circumstances of the Offense and Robert's History and Characteristics**

    a. **The Offense**

From about March through October 2024, Robert was part of a drug distribution ring where he would arrange for, pay for and pick up parcels mailed from Arizona containing cocaine, and on one occasion, fentanyl, at sham addresses in Orange County. It should be noted that Robert was surveilled multiple times and arrested after being followed by law enforcement and was never found to be in possession of a gun or any weapons. *See* PSI ¶¶ 7-16. When he was arrested in October 2024, he waived his *Miranda* rights and admitted to his conduct. PSI ¶ 17.

   b. **Adjustment to Incarceration, Post-Offense Rehabilitation, Acceptance of Responsibility**

Robert consented to detention following his arrest on October 11, 2024. (*U.S.A. v. Smith*, No. 25-CR-410-NSR, ECF #15, 9/11/25). He has been incarcerated at Westchester County Jail ('WCJ") since that day, for the past year and two months. He became a trustee at the jail in February last year, and as a result, has jobs as a porter and kitchen staff. He completed a ServSafe Food Handler certification as well as two Aramark In2Work classes, both from programs that assist with re-entry job placement. Exhibit C – Robert Smith's Certificates earned at Westchester County Jail. He pled guilty by Information to two counts of narcotics conspiracy, 21 U.S.C. § 846; § 841(b)(1)(B), before the Honorable Judge Reznick on September 11, 2025.

   i.

### c. Robert's Upbringing, History and Characteristics

As detailed in Robert's letter to the Court, the circumstances he grew up in left him feeling angry, as if life was unfair, and wanting to be loved. Exh. B.
PSR ¶ 21, Exh. A.

. He turned to the streets of Newburgh South in the City of Newburgh for the male presence and brotherhood he lacked at home. He stopped attending school at age eighteen, after being arrested two times that year, both for low-level drug crimes. *Id.* ¶¶ 34-37. By age 20, he was arrested two more times for drug and drug-related charges. *Id.* Robert has never been arrested for a violent offense, nor a weapons offense.

For over ten years after his arrest at age 20, he stayed out of trouble, not having any more contact with the criminal legal system until he was 33. During this time, he became an adult, cared for his mother, started a family and took on the role of father to his former partner, Wanelia Martinez' children.

> *Robert Smith. . . is my best friend and the father of my children. I want to share the positive role he has played in our lives and why his absence has been so difficult for our family. I suffer from arthritis in my knees, and there were many times when everyday tasks became risky for me.*
>
> *Once, I slipped while getting out of the shower, and he was right there to catch me and make sure I was safe. Moments like that showed how caring and dependable he truly is.*
>
> *He has also been a very involved father—driving our children to school, practices, and wherever they needed to be. He was always present and supportive. As a grandfather, he shared a close and loving bond with his grandson, who misses him very much.*
>
> *Robert has always been a steady, caring, and helpful person in our home.*

---

[1] Ehlers, A. (2013). Trauma-focused cognitive behavior therapy for posttraumatic stress disorder and acute stress disorder. In Simos, G., & Hofmann, S. G. (eds). CBT for anxiety disorders: A practitioner book (pp. 161-190). New York, NY: Wiley. https://www.apa.org/ptsd-guideline/treatments/cognitive-behavioral-therapy

> *I kindly ask that you take into consideration the good he has done for his family and the support he has always provided.*

Exhibit D – Letter by Wanelia Martinez, Robert Smither's former partner and mother of his children. Wanelia described eventually ending their romantic relationship because, despite Robert being a loving father and still her best friend to this day, she worries about the effects of his re-incarceration on her children (his biological daughter and two stepchildren who he calls his own), especially her 16-year-old son. She explained that growing up in their impoverished neighborhood in Newburgh was hard enough without the influence of Robert's poor choices.



> His daughter reflects that,

> *My father has always been a constant source of support and guidance in my life, especially during my volleyball and basketball seasons. He rarely missed a game or practice, no matter how tired he was or how busy his schedule became. He encouraged me when I felt discouraged, celebrated my accomplishments, and reminded me to work hard and stay disciplined. Those moments meant more to me than I can fully express.*

> *Because my mother is disabled, my father has played an especially important role in ensuring that I was able to participate in sports and other activities. He helped with transportation, attended events, and made sure I felt supported both on and off the court. Without him, these responsibilities have been much more difficult for our family, and I have felt the absence of his presence and encouragement deeply.*

> *Beyond athletics, my father has always emphasized the importance of respect, accountability, and perseverance. His guidance has shaped who I am becoming, and his absence has left a significant emotional gap in my life. I miss having him there to talk to, to seek advice from, and to feel secure knowing he is supporting our family.*

> *I truly believe my father is capable of growth and positive change. I have seen his desire to do better—not only for himself, but for me and for our family. I respectfully ask that you consider the impact this situation has had on me and the importance of a father's presence and guidance in a young person's life.*

Exhibit E – Letter by _____, daughter of Robert Smith.

Robert's "everything," his mother, Pernell Boykin, died in 2023 at 73 years old, after battling cancer and diabetes complications. Robert had been her sole care provider throughout a two-month stay in Intensive Care, and for years prior. He meticulously prepared her apartment for her to live out her last days at home with hospice care.  He was devastated when she only lived one day outside of the hospital (Exhibit C).  At 39 years old, just starting to rebuild his life after a six-year prison term, he was not ready to lose her.  Feelings of guilt, self-condemnation and intensified responsibility took over, and when presented with the choice to make more money faster, he relented to a
familiar world.

> *For many years, Robert was also the sole caretaker for his mother, Pernell, until her passing. He took on that responsibility with humility and devotion, balancing his own obligations while ensuring she received the care, comfort, and dignity she deserved. Losing his mother deeply affected him, but even through that pain, he continued to be a source of strength for his family.*
>
> *Throughout the time I've known him, Robert has always been the type of person who lends a helping hand without hesitation. Whether it's assisting friends, supporting neighbors, or simply showing up for someone in their time of need. His actions have always spoken louder than words.*
>
> *. . . He is a man capable of reflection, growth, and change. . . I believe Robert has the insight and emotional capacity to learn from this experience and rebuild his life in a way that honors both his responsibilities and his potential.*
>
> *I respectfully ask that you consider his lifelong pattern of love, service, and dedication to his family when determining his sentence. Allowing Robert the opportunity for rehabilitation and redemption would not only serve justice but also preserve a father, a son, and a man who still has so much good to offer.*

Exhibit F – Letter by Joseph Chambers, friend of Robert Smith.

2. **The Inclusion of CHC Points for a Case from When Robert was 19-years-old in his Guidelines Calculation Warrants a Downward Variance**

Robert's Criminal History Calculation ("CHC") as calculated by Probation includes points for a 2004 case from when he was 19 years old – a case from over 15 years ago (20 years before the instant offense), which raises his CHC from II to III. PSR ¶¶ 81, 36. His Guidelines as calculated by Probation because of this are 108 to 135 months, which is higher than anticipated by the plea agreement.  The plea

agreement assigns zero points to that conviction and calculates his CHC at II, resulting in Guidelines of 97 to 121 months.

> A downward departure also may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses. Certain risk factors may affect a youthful individual's development into the mid-20's and contribute to involvement in criminal justice systems, including environment, adverse childhood experiences, substance use, lack of educational opportunities, and familial relationships. In addition, youthful individuals generally are more impulsive, risk-seeking, and susceptible to outside influence as their brains continue to develop into young adulthood. Youthful individuals also are more amenable to rehabilitation.
>
> The age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age. Age-appropriate interventions and other protective factors may promote desistance from crime.

U.S.S.G. Amend. 829 (effective Nov. 1, 2024). This policy statement in the Guidelines incorporates current research on youth brain development and recidivism risk factors into sentencing factors.

Your Honor has the discretion to consider this statement, the developmental science about young people's brain development, and the trend of the U.S. Supreme Court decisions that find youth should be treated differently from adults in varying downward from the Guidelines Calculation in this case. Assigning points to his 2004 conviction overestimates Robert Smith's risk of recidivism by inflating his criminal history calculation. Probation recommends a variance to 96 months, down from its calculation of his Guidelines at 108-135 months. It follows that a variance down from 97-121 months (Robert's Guidelines at CHC II, not including his 20-year-old conviction) would be appropriate.

### 3. **Purposes of Sentencing**

Lastly, in determining the appropriate sentence, 18 U.S.C. § 3553(a) directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence for criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

A 60-month sentence is sufficient to serve the ends of 18 U.S.C. § 3553 for Robert.  This is a substantial sentence for a 41-year-old man, who is a father to a 14-year-old who will inevitably be much older when he is released. By working to rehabilitate himself with vocational training in jail,                                    and accepting responsibility in this case, Robert has demonstrated that he will lead a law-abiding life moving forward.  He will remain committed to employment,                                                          so that he can be there for his daughter and stepchildren moving forward.  60 months is a substantial sentence, which reflects the seriousness of the offense of drug trafficking and promotes respect for the law.

## Conclusion

Robert's life was marked by loss even before his birth.  With his mother's passing came the poor decisions he made in this case, but being a father and father figure gives him the motivation to rewrite his future.  As a 41-year-old adult, entering middle age, he is tired of living this way.  He aims to continue his employment training,                                                                              .  His greatest wish is to support his daughter and family.  We urge the Court to acknowledge that there is hope for his future, and to sentence him to 60 months' imprisonment and the maximum term of supervised release, 4 years.

Sincerely,

/s/ Jane White

Jane White, Esq.
Assistant Federal Defender

Cc:    Assistant United States Attorney Ben Arad

8